FOR PUBLICATION

<div style="border:1px solid">

UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

In Re: John Sevastakis,
        Debtor.

Frank Coluccio & Josephine Coluccio,
        Plaintiff,
  v.
John Sevastakis,
        Defendant.

</div>

Case No. 17-10245 (MBK)

Chapter 7

Adv. Pro. No. 17-01243 (MBK)

**MEMORANDUM DECISION**

Presently before the Court in this adversary proceeding are competing motions for summary judgment. The first is a motion for summary judgment (ECF No. 24) filed by Plaintiffs Frank and Josephine Coluccio ("Plainitffs") seeking to deny discharge of a debt owed to them by Debtor John Sevastakis ("Debtor") under 11 U.S.C. § 523(a)(2)(A). Debtor opposed the motion and filed a cross-motion (ECF No. 27) seeking summary judgment in his favor on all counts of Plaintiffs' Complaint. The Court has read all submissions, considered the arguments made during the hearing on August 6, 2018, and has reviewed the state court materials and transcripts supplied by counsel. For the reasons set forth below, Plaintiffs' motion is GRANTED and Debtor's motion is DENIED. The debt is deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## I. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409. The following constitutes the Court's findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

## II. Background and Procedural History

The factual history of this case is well known to the parties and will not be repeated in detail here. The pertinent facts, which are undisputed and determinative of this case, are as follows: Plaintiffs entered into a written contract with Sevas Builders, Inc. for certain renovations and an addition to their single-family home. On September 28, 2006, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Ocean County, seeking damages from Sevas Builders, Inc. and from Debtor (individually and as owner of Sevas Builders, Inc.) based upon breach of contract, negligence, breach of warranty, breach of the implied covenant of good faith and fair dealing, conversion, and violations of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8 ("NJCFA"). After a fourteen-day nonjury trial in Monmouth County Superior Court[2] the state court judge issued an Opinion and an Order for Judgment—dated June 7, 2013—and an Amended

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[2] On December 1, 2006, venue was transferred from Ocean County to Monmouth County.

2

Order for Judgment—dated June 17, 2013—finding Debtor and Sevas Builders, Inc. jointly and severally liable to Plaintiffs in the amount of $761,527 for fraud and various misrepresentations. Debtor appealed and the New Jersey Appellate Division affirmed the superior court decision. The specifics of the state court's findings, as they relate to the motions presently before this Court, will be discussed in detail below.

On June 5, 2017, Debtor filed a voluntary petition for chapter 7 relief. Plaintiffs filed an adversary proceeding on April 3, 2017 seeking to declare the debt owed to them nondischargeable under 11 U.S.C. § 523(a)(2)(A).[3,4] This Court is now faced with competing motions for summary judgment.

### III. Legal Discussion

#### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 1). "In deciding a motion for summary judgment, the judge's function is to

---

[3] In their Complaint, Plaintiffs also sought relief under § 727(a)(5) and § 523(a)(6); however, their summary judgment motion is limited to their claim under § 523(a)(2)(A).

[4] The Bankruptcy Code ("Code") is set forth in 11 U.S.C. §§ 101-1532, inclusive. Specific provisions of the Code are referred to in this Opinion as "§___."

3

determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S. Ct. 2548). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S. Ct. 2505. A dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

"Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *In re Moran-Hernandez,* 544 B.R. 796, 800 (Bankr. D.N.J. 2016) (quoting *Matsushita,* 475 U.S. at 586, 106 S. Ct. 1348). A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. FED. R. CIV. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there

4

is a genuine [dispute] for trial"). *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc., supra,* 477 U.S. at 249–250, 106 S. Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S. Ct. 1348.

### B. Standard for Claim Under § 523(a)(2)(A)

Section 523 of the Bankruptcy Code provides that:

> a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (2) for money, property, services, . . . or credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). The terms "false pretenses," "false representation," and "actual fraud" are not explicitly defined in the Code; nevertheless, the Supreme Court has dictated that "[t]hey are common-law terms, and . . . imply elements that the common law has defined them to include." *Field v. Mans*, 516 U.S. 59, 69, 116 S. Ct. 437, 443, 133 L. Ed. 2d 351 (1995). Among these three grounds for nondischargeability, courts in this Circuit often distinguish between "false pretenses" and "false representation" based on whether the debtor's misrepresentation was implied—indicating "false pretense"—or express—indicating "false representation." *See, e.g.*, *In re Williams*, No. 15-23287, 2018 WL 3344174, at *14 (Bankr. D.N.J. July 5, 2018) (collecting cases);

5

*In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *21 (Bankr. D.N.J. Jan. 31, 2018); *In re Witmer*, 541 B.R. 769, 778 (Bankr. M.D. Pa. 2015). The third cause of action under § 523(a)(2)(A), "actual fraud," is defined by the elements of common law fraud. *See Field v. Mans*, 516 U.S. at 443-444; *In re Williams*, 2018 WL 3344174, at *14.

Courts have noted that "[a]lthough the terms 'false pretenses,' 'false representation,' and 'actual fraud' refer to different concepts, they are closely related and each requires a plaintiff to demonstrate proof of false or deceptive conduct, fraudulent intent, and justifiable reliance." *In re Altieri*, No. 11-12819, 2012 WL 3595298, at *2 (Bankr. D.N.J. Aug. 20, 2012) (internal quotations and citations omitted); *see also In re Chung-Hwan Kim*, 2018 WL 671467, at *22. Accordingly, courts generally require that a movant prove some variation of the following elements in order to establish fraud of any type under § 523(a)(2)(A):

(1) the debtor obtained money, property or services through a material misrepresentation;

(2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth;

(3) the debtor intended to deceive the creditor;

(4) the creditor justifiably relied on the debtor's false representations; and

(5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.[5]

---

[5] This Court notes that there does not exist in the Third Circuit a singular, universally-used test for proving a claim under § 523(a)(2)(A). However, a close inspection of existing case law reveals that all tests require a movant to fulfill the same basic requirements, and the primary differences between the tests are the number of elements which define the test for establishing a claim. *Compare In re Bocchino*, 794 F.3d 376, 381 (3d Cir. 2015) (five elements) *with In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *22 (Bankr. D.N.J. Jan. 31, 2018) (six elements) *and In re Softcheck*, No. 08-23844, 2009 WL 4747527, at *7 (Bankr. D.N.J. Dec. 4, 2009) (ten elements) *and In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (five elements). Because the relevant case law agrees as to what is substantively required to prove a claim under § 523(a)(2)(A), the variation in the number of elements does not have any meaningful impact on the analysis in this case, or on the legal analyses performed by other courts that have

*See In Re Gallagher*, 2016 WL 4989942, at *2–3 (Bankr. D.N.J. Sept. 9, 2016).[6] These elements must be established by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991). "Generally, the provisions of section 523(a) are 'strictly construed against creditors and liberally construed in favor of debtors,' owing to the overriding bankruptcy purpose of granting debtors a fresh start." *In Re Gallagher*, 2016 WL 4989942, at *2 (quoting *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir. 1995)).

In cases involving a debtor-contractor, such as the case presently before this Court, courts in this Circuit have generally recognized "two ways to establish misrepresentation or fraud under section 523(a)(2)(A): (1) to show that the contractor executed the contract never intending to comply with its terms, or (2) to demonstrate that the contractor intentionally misrepresented a material fact or qualification when soliciting the work." *In re Purington*, No. 11-11617, 2012 WL 1945510, at *10 (Bankr. D.N.J. May 30, 2012) (citing *In re Wiszniewski,* No. 09–11102, 2010 WL 3488960, *5 (Bankr. N.D. Ill. Aug. 31, 2010); *see also e.g.*, *In re Chung-Hwan Kim*, 2018 WL 671467, at *22; *In re Antonious*, 358 B.R. 172 (Bankr. E.D. Pa. 2006). In the debtor-contractor

---

addressed a § 523(a)(2)(A) claim in this Circuit. Rather, the difference in the number of elements appears to be merely organizational. *Compare In re Bocchino*, 794 F.3d at 381 (including the requirements that the debtor "obtained money, property or services" and that there was "a material misrepresentation" in the same element) *with In re Chung-Hwan Kim*, 2018 WL 671467, at *22 (breaking the requirements that the debtor "obtained money, property or services" and that there was a "material representation" into two separate elements).

[6] The Court notes that several courts within our circuit—including the Third Circuit itself—have described the fourth element of § 523(a)(2)(A) as requiring "reasonable" reliance. *See, e.g.*, *In re Bocchino*, 794 F.3d at 381 (stating that the movant must show that "the creditor reasonably relied on the debtor's false representations" to establish the fourth element of a claim under § 523(a)(2)(A)); *In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (same). However, the Supreme Court has clearly articulated that the type of reliance required to establish fraud under § 523(a)(2)(A) is "justifiable" reliance, which is a lower threshold than "reasonable." *Field v. Mans*, 516 U.S. 59, 74–75, 116 S. Ct. 437, 446, 133 L. Ed. 2d 351 (1995) ("[W]e hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance.").

context, general representations about expected work performance or poor quality of work (without something more) merely give rise to a breach of contract action and will not suffice to constitute misrepresentation under § 523(a)(2)(A). *See In re Chung-Hwan Kim*, 2018 WL 671467, at *22; *In re Moeller*, No. 09-17417, 2014 WL 1315854, at *6 (Bankr. D.N.J. Mar. 31, 2014); *In re Purington*, 2012 WL 1945510, at *10.

### C. Legal Discussion

In the instant motion for summary judgment, Plaintiffs state that they seek nondischargeability under § 523(a)(2)(A) due to Debtor's alleged "fraudulent acts as well as his false representations and false pretenses." Pls.' Br. Supp. Summ. J. 17, ECF No. 24-2. Therefore, Plaintiffs implicate all three grounds for relief under § 523(a)(2)(A) and focus on the second method for establishing a § 523(a)(2)(A) claim against a debtor-contractor: material misrepresentation of fact or qualifications. In support of their motion, Plaintiffs rely solely on the state trial court's findings of fraud and misrepresentation. In relevant part, Plaintiffs' motion cites: (1) Debtor's forgery of Plaintiff's signature on the permit application, and related misrepresentations; (2) Debtor's misrepresentations regarding his ability to draw architectural plans; (3) Debtor's misrepresentations to the township regarding the proposed non-residential use for the addition; (4) Debtor's failure to advise Plaintiffs that they would need a licensed architect or design professional to prepare drawings; (5) Debtor's failure to provide the project with a crawl space as indicated in the initial plans and agreement; and (6) Debtor's failure to build the addition to conform with requirements under the applicable building code. Plaintiffs argue that the opinion of the state trial court in the prior litigation makes findings with respect to each of these frauds

8

and/or misrepresentations sufficient to satisfy the elements of § 523(a)(2)(A). Accordingly, Plaintiffs assert that the award of treble damages and attorney's fees and costs for violations of the New Jersey Consumer Fraud Act is nondischargeable.

In his cross motion, Debtor takes the position that the state court did not make any findings with respect to his intent and, therefore, Plaintiffs cannot satisfy their burden under § 523(a)(2)(A) as a matter of law. Debtor also asserts that issues exist as to his individual liability and seeks summary judgment in his favor as to Plaintiffs' claims under § 523(a)(6) and § 727(a)(5). The Court does not find Debtor's arguments persuasive and, for the reasons set forth below, determines that Plaintiffs have established all elements of § 523(a)(2)(A) in the debtor-contractor context by a preponderance of the evidence and, as such, are entitled to summary judgment on that claim.

1. **Material Misrepresentations**

On this record, the Court determines that Debtor made significant misrepresentations and created a false pretense when he entered into the contract with Plaintiffs. As an initial matter, the state court determined that Debtor had "fail[ed] to advise the plaintiffs of the requirement that they retain a licensed architect or design professional to prepare the drawings." Pls.' App'x (hereinafter "State Court Opinion") 26, ECF No. 24-3 at 52; *see also In re Chung-Hwan Kim*, 2018 WL 671467, at *22 (collecting cases holding that an omission may constitute a material misrepresentation); *In re Docteroff*, 133 F.3d 210 (3d Cir. 1997) (holding that a claim under § 523(a)(2)(A) can be predicated on debtor's failure to disclose that material fact). Instead, Debtor

9

"misrepresent[ed] that [he] was qualified to design a roof that would comport with the plaintiffs' expectations under the contract." State Court Opinion at 29.

Further, by entering into the contract with Plaintiffs, Debtor represented—both expressly and impliedly—that he would "obtain [the] necessary building permits," comply with all applicable ordinances, and complete the project in a lawful manner. State Court Opinion at 14. Despite these representations, Debtor engaged in the work without regard to appropriate permits, inspections, or compliance with other rules and laws. As the state court observed, Debtor "was comfortable with 'bending the rules' if needed to make the job more profitable." *Id.* at 8. It is evident from the record that Debtor not only bent the rules—but broke the rules—during the permit process. Debtor fraudulently signed the owner-Plaintiff's name on the permit application that he submitted to the township. With respect to this issue, the trial court found that Debtor had

> signed [Plaintiff's] name on the permit application to the township under the 'owner's certification section,' rather than signing his own name under the section to be completed by an agent 'if the applicant is not the owner in fee.' [Debtor] admitted that [Plaintiff] had not given him express authorization to sign his name and could give no good reason for signing [Plaintiff's] name, other than to say that he did it 'because I felt they trusted me.'

State Court Opinion at 24-25.

The state court further noted that the permit indicated that Plaintiff had prepared the plans, and that the building was being used exclusively as a single-family residence. In fact, the plans were drawn by Debtor and the addition should have been labeled for "mixed use." The state court also found that Debtor made an intentional misrepresentation to the township when he referred to the addition as a "great room" on the permit application, as opposed to a "school room" as

10

contemplated by the parties and memorialized in the contract documents. State Court Opinion at 26 n.20.

At trial, Debtor gave no plausible explanation for the actions he took and the misrepresentations he made, nor does he dispute or explain these misrepresentations in his Opposition to Plaintiffs' motion. In light of Debtor's undisputed statements and actions, this Court determines that Plaintiffs have met their burden of establishing the first element of a claim under § 523(a)(2)(A) by a preponderance of the evidence. This Court finds that Debtor made false material misrepresentations regarding his qualifications to prepare plans for the project, the need for an architect or design professional to prepare plans, and his method for obtaining permits and performing work as contemplated in the parties' contract.

### 2. Knowledge that the Representation was False

Another element which must be shown to establish a cause of action for nondischargeability under § 523(a)(2)(A) is that, at the time that the debtor made the representations or omissions, he knew that those representations were false, or that they were made with gross recklessness as to their truth. *In re Purington*, 2012 WL 1945510, at *11; *In re Cohen*, 191 B.R. 599, 605 (D.N.J. 1996) *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998). Here, there is no question that Debtor knew that the representations he was making were false. As an experienced contractor, Debtor understood his qualifications and limitations regarding his ability to draw plans, and he was familiar with the permit process. Nevertheless, he withheld the need for an architect or design professional from Plaintiffs and misrepresented his own ability to draw the plans. Debtor also was

11

aware of his obligation to obtain the necessary building permits under the contract and knowingly skirted that obligation when he forged Plaintiff's signature and falsely reported who would be performing the work, who had prepared the plans, and the type of work that was to be done. Debtor gave no explanation during the state court proceedings, or in his submissions in the present case, which would dissuade this Court from concluding that his misrepresentations were knowingly false.

### 3. Intent

In order to succeed in a claim under § 523(a)(2)(A), a plaintiff must show by a preponderance of the evidence that a debtor possessed the requisite intent to deceive. Because a debtor will rarely admit to intentional deception, the intent element of a claim under § 523(a)(2)(A) is generally inferred from totality of the circumstances. *In re Bocchino*, 794 F.3d 376 (3d Cir. 2015); *see also In re Chung-Hwan Kim*, 2018 WL 671467, at *28 (collecting cases and observing that, because a debtor will rarely admit to acting with an intent to deceive, courts may consider circumstantial evidence regarding the debtor's intent); *In re Altieri*, 2012 WL 3595298, at *4 (holding that "courts may infer the element of intent based on circumstantial evidence"). In this case, Plaintiffs assert that the state court's findings are sufficient to satisfy their burden of establishing intent. In his Opposition and Cross-Motion, Debtor contends that the state court opinion contains no discussion with regard to intent to deceive; accordingly, Debtor concludes that Plaintiffs have failed to, and on this record cannot, establish the requisite intent. In support of his position Debtor observes that the New Jersey Consumer Fraud Act does not require a finding of

12

"intent to deceive," and he argues that a finding of violation of the NJCFA cannot have a preclusive effect when determining nondischargeability under § 523(a)(2)(A). This Court agrees to an extent.

A dischargeability determination rooted in § 523(a)(2)(A) cannot rely *solely* on a state court judgment under the NJCFA because "the NJCFA applies a strict liability standard to unlawful conduct by contractors while section 523(a)(2)(A) requires actual intent to defraud." *In re Altieri*, 2012 WL 3595298, at *3; *see also Purington,* 2012 WL 1945510, at *13 (holding that a debtor's violation of the NJCFA did not render a debt nondischargeable because the NJCFA does not require the element of intent to deceive). However, this Court's determination is not bottomed on Debtor's violation of the NJCFA. Rather, it rests on the entirety of the record and the totality of the circumstances—including a state court opinion replete with factual findings evidencing Debtor's deceitful intent. *See e.g.*, *In re Melendez*, No. 17-00068, 2018 WL 4063378 (Bankr. E.D. Pa. Aug. 27, 2018) (holding that collateral estoppel allows a bankruptcy court to accept certain factual findings from a previous action as evidence of nondischargeability and to consider whether those findings establish the elements of dischargeability exception).

Specifically, as discussed above, Debtor misrepresented his qualifications and ability to design a roof that would comport with Plaintiffs' expectations under the contract. The Court is mindful that in the debtor-contractor context breach of contract or shoddy workmanship is insufficient to establish a claim under § 523(a)(2)(A). *See, e.g.*, *In re Chung-Hwan Kim*, 2018 WL 671467, at *22. However, the facts of this case go beyond mere breach of contract or poor work performance. In this case, the state court found that Debtor was an experienced contractor; yet he did not give thought as to how to build a roof consistent with the terms of the contract until after

13

the project was well underway—at which point it was too late. The Debtor could have employed an architect or design engineer to assist, but purposefully opted to mislead the Plaintiffs and the township regarding a need for such independent expertise. In short, Debtor represented to Plaintiffs that he was qualified to draw up plans for their roof without actually giving consideration to a workable design or his ability to draw same. At a minimum, such conduct constitutes gross recklessness sufficient to establish the intent element of § 523(a)(2)(A). *See In re Bocchino*, 794 F.3d 376.

As stated, Debtor withheld the need for an architect or design professional from Plaintiffs. Such a material omission cannot be considered merely negligent when one considers the lengths to which Debtor went to avoid drawing both Plaintiffs' and the township's attention toward the project and the architect requirement. Specifically, Debtor made material misrepresentations on the permit application as to who would be performing the work, who had prepared the plans, who would serve as general contractor, and the type of work being performed. The state court explicitly found that Debtor made these misrepresentations because

> [i]f [Debtor] disclosed that he was the principal contractor and was the person making the application, he could not use his own drawings to support the application. Similarly, had [Debtor] disclosed that the construction had a potential 'mixed use,' the Town would not have accepted [Debtor's] plans and the plaintiffs, in all probability, would have been required to engage an architect – a circumstance which would have undoubtedly avoided many of the problems that arose during this project.

State Court Opinion at 25-26. Accordingly, the record indicates that Debtor intentionally lied on the permit application to avoid drawing attention to the project, and to trick the township and Plaintiffs into using his own drawings as opposed to those of a licensed architect or design

14

professional. Furthermore, Debtor admittedly forged Plaintiff's signature on the application document to accomplish this goal. Debtor does not offer any explanation or present any argument suggesting that his intentions were honest in this respect. Based on these circumstances, the only conclusion that can be drawn is that Debtor made these misrepresentations intentionally to deceive the township and Plaintiffs.

Given the totality of the circumstances in the instant case, this Court concludes that Plaintiffs have established the intent element of a § 523(a)(2)(A) claim by a preponderance of the evidence.

### 4. Reliance

To prevail on their § 523(a)(2)(A) cause of action, Plaintiffs must also establish that they relied Debtor's misrepresentations and that their reliance was justified. *See Field v. Mans*, 516 U.S. at 74–75, (holding that a creditor's reliance under § 523(a)(2)(A) need only be subjectively "justified" and not objectively "reasonable"); *In re Aug.*, 448 B.R. 331, 350 (Bankr. E.D. Pa. 2011) (holding that the justifiable reliance standard "is a lower standard than reasonable reliance, but nonetheless requires that the creditor prove that it actually relied upon the alleged misrepresentation or false pretenses"). Under the justifiable reliance standard, a creditor is not required to make an independent investigation into the truth or falsity of every representation. *See In re Aug.*, 448 B.R. at 351 (collecting cases); *Field v. Mans*, 516 U.S. at 77. However, as the United States Supreme Court noted, "[j]ustifiability is not without some limits." *Field v. Mans*, 516 U.S. at 71. The creditor is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his

15

opportunity to make a cursory examination or investigation." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 541, cmt. a (1976)). This rule applies "only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by use of his senses." *Id.* Justification, therefore, is based upon "an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *Id.* (citing W. PROSSER, LAW OF TORTS § 108, at 717 (4th ed. 1971)); *see also* DAN B. DOBBS ET AL., DOBBS' LAW OF TORTS § 673 (2d ed. 2016) (noting that the "strength of the 'notice' to the plaintiff that investigation may be needed" is dependent on a number of factors including "the obscurity or obviousness of the contradiction in the defendant's statements" and the "relationship of the parties").

This Court finds that Plaintiffs in this case were justified in relying on Debtor, an experienced contractor, to complete their project in a manner consistent with their contract and all building code requirements. At the very least, Plaintiffs were justified in their reliance on Debtor to obtain the necessary permits and inspections, and were under no obligation to conduct an investigation to ensure that Debtor had not forged their signature or misreported information on the permit application.

### 5. Damages and proximate cause

The final element of a claim under § 523(a)(2)(A) requires a plaintiff to suffer a loss proximately caused by defendant's conduct. *See, e.g.*, *In re Chung-Hwan Kim*, 2018 WL 671467, at *32; *In re Williams*, 2018 WL 3344174, at *15 (citing *In re Santos*, 304 B.R. 639, 651 (Bankr. D.N.J. 2004)). In this case, there is no question that Plaintiffs were damaged by Debtor's actions

and representations. The state court made extensive findings regarding the damages, *see* State Court Opinion at 35-44, and determined that the extensive defects in the construction required demolition and reconstruction. Those defects could have been avoided if Debtor had not misrepresented his qualifications and, instead, had adhered to the contract, submitted proper drawings, and subjected the project to inspections by accurately filling out the permit application.

### D. Debtor's Arguments and Opposition

As set forth above, in his Motion and Opposition, Debtor asserts that Plaintiffs have failed to make any argument regarding "piercing the corporate veil" or based on an "alter ego" theory and, thus, cannot show that Debtor, individually, is liable for the entire amount of the judgment. Debtor further states that the state court's opinion did not distinguish between Debtor and his company when it made the relevant findings. Debtor's argument fails for several reasons. First, contrary to Debtor's assertion, the state court's opinion is replete with specific findings with respect to Debtor's actions as an individual. *See, e.g.*, State Court Opinion at 25, 26, 29. Moreover, the concepts of an alter ego and of piercing the corporate veil are employed as a method of determining liability. In this case, the state court already settled the issue of liability and determined that Debtor, in his individual capacity, and Sevas Builders, Inc. are jointly and severally liable for the amount of the judgment. "A liability is joint and several when the creditor may sue one or more of the parties to such liability separately, or all of them together, at his [or her] option." *S.E.C. v. J.W. Barclay & Co.*, 442 F.3d 834, 843 (3d Cir. 2006) (quoting *United States v. Gregg,* 226 F.3d 253, 260 (3d Cir. 2000) (internal quotation and citation omitted)). In light of the *Rooker-Feldman* doctrine, this Court is precluded from reconsidering or rejecting the

17

state court's liability determination. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

This Court notes that the cases relied on by Debtor, *In re M.M. Winkler & Assocs.*, 239 F.3d 746, 751 (5th Cir. 2001) and *In re Hyland*, 213 B.R. 631 (Bankr. W.D.N.Y. 1997), are from out of circuit and, as such, are not binding. In any event, they are distinguishable from the case at hand and unpersuasive. As set forth above, the state court made findings with respect to Debtor's actions as an individual, and determined that Debtor, as an individual, was jointly and severally liable for the debt at issue.

### IV.    Conclusion

For the foregoing reasons, the Court finds that Debtor knowingly misrepresented his qualifications and obligations under the contract with the intent to deceive Plaintiffs. Debtor's cross-motion for summary judgment is denied, Plaintiffs' motion is granted, and the debt owed to Plaintiffs in the amount of $761,927.00 is nondischargeable under § 523(a)(2)(A). Counsel for Plaintiffs shall submit a proposed form of Order consistent with this Opinion.

*[signature]*
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: September 26, 2018

18